IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LUIS ARROYO,

                Plaintiff,

v.                                          OPINION and ORDER

WARDEN BOUGHTON, DANIEL GOFF,          18-cv-1055-jdp
TRINA KROENING-SKIME, and WAYNE PRIMMER,

                Defendants.[1]

---

Pro se plaintiff Luis Arroyo alleges that defendants, prison officials at his former institution, Wisconsin Secure Program Facility (WSPF), interfered with his ability to practice Islam. He says that he was prevented from attending a religious service and that when he complained about it, WSPF's chaplain retaliated against him by scheduling a later Muslim service in a hot gym. He says that this is part of a pattern in which WSPF officials routinely fail to inform Muslim inmates about religious services. And he says that he was not allowed to keep a religious text that was donated by a volunteer.

I have screened Arroyo's complaint, Dkt. 8, and I have dismissed some of his claims for his failure to administratively exhaust them, Dkt. 23. Defendants have moved for summary judgment on his remaining claims. Dkt. 24. Arroyo has not filed a brief or any other materials in response by the February 21, 2020 deadline, so I will treat the facts proposed by defendants as undisputed. Because the undisputed facts show that defendants did not violate Arroyo's

---

[1] I have updated the caption to reflect defendants' names as indicated in their brief supporting their motion for summary judgment, Dkt. 25.

rights and that he is not entitled to any injunctive relief, I will grant defendants' motion and close this case.

ANALYSIS

Defendants are entitled to summary judgment on Arroyo's claims if there is no genuine dispute regarding any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Because Arroyo has not submitted any proposed facts or responded to defendants' proposed facts, all facts discussed in this order are undisputed. Arroyo brings five groups of claims, which involve (1) his inability to attend WSPF's service celebrating Eid al-Fitr, a Muslim holiday; (2) a prayer service scheduled in a hot gym, which Arroyo says was done in retaliation for a complaint he filed; (3) defendants' practices regarding scheduling and advertising Muslim religious services; (4) a donated Qur'anic dictionary that Arroyo was not allowed to keep; and (5) claims for injunctive relief.

**A. Eid al-Fitr claim**

Arroyo contends that defendant Wayne Primmer, a WSPF correctional sergeant, violated his rights under the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause by preventing him from attending an Eid al-Fitr service, a celebration commemorating the end of Ramadan, on Friday, June 15, 2018. Both claims require Arroyo to show that Primmer intended to violate his rights. *Lovelace v. Lee*, 472 F.3d 174, 201 (7th Cir. 2006) ("[O]nly intentional conduct is actionable under the Free Exercise Clause."); *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001) ("[P]laintiffs must . . . prove discriminatory intent in order to establish a violation of the Equal Protection Clause."). The undisputed facts show that Primmer had no such intent.

On Friday afternoons, Muslim inmates at WSPF typically held Jumu'ah, a group prayer service led by a volunteer imam. But on June 15, the Jumu'ah service was replaced on the schedule by a communal Eid al-Fitr meal, which was scheduled for that morning. On that day, Primmer was in charge of the Foxtrot unit, where Arroyo was housed. Primmer had received at least one email during the previous week that included a notification about Eid al-Fitr, but that day, he had forgotten that the usual Jumu'ah service was being replaced by the Eid al-Fitr meal.

In Primmer's experience, if inmates intend to attend a religious activity, they will ask him about it over the intercom or in person. That morning, several inmates, including Arroyo, asked Primmer when they would be sent to their Jumu'ah service. Because Jumu'ah services were held on Friday afternoons, and because WSPF's chaplain would always call the unit when it was time to send inmates to Jumu'ah, Primmer told the inmates that they had to wait until he received a phone call telling him that it was time to send them. Primmer does not recall any inmate asking about Eid al-Fitr, and he believes that such a request would have stood out because he was not familiar with the holiday.

Primmer received a phone call at some point during the morning telling him that it was time to send inmates to a Native American Pipe and Drum service and to another religious service that Primmer had never heard of. Because no inmate had specifically asked about Eid al-Fitr, he assumed that no inmates from Foxtrot wanted to attend. He then called over the intercom to gather all inmates signed up to attend the Pipe and Drum service.

Later that day, Arroyo again asked Primmer about Jumu'ah, and Primmer said that he had received a call only about the Pipe and Drum service and another service whose name he did not know. Arroyo realized that Primmer was talking about Eid al-Fitr and told him that it was the Muslim service being held in place of Jumu'ah that day. Primmer then realized his

3

mistake, but the service had already concluded at that point, so it was too late to send Arroyo and the other inmates.

Primmer was careless when he failed to inform Arroyo of the Eid al-Fitr service, but there is no evidence that his conduct was intentional. He was simply unaware that Eid al-Fitr had replaced the Jumu'ah service on the Friday schedule and did not think that any Foxtrot inmates needed to go because none had specifically asked him about Eid al-Fitr. Despite his failure to inform the Muslim inmates about the religious observance, he is entitled to summary judgment on this claim.

**B. Retaliation claim**

Arroyo submitted a complaint through WSPF's inmate complaint system later in June 2018 regarding the missed Eid al-Fitr service. Defendant Daniel Goff is now WSPF's chaplain but was the interim chaplain at the time. Arroyo says that Goff retaliated against him in violation of the First Amendment by scheduling and holding a Jumu'ah service in WSPF's hot indoor gym on June 29, a day on which the heat reached 95 degrees. This claim requires Arroyo to show that Goff subjected him to adverse treatment because of Arroyo's constitutionally protected activity. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

But it was Goff's predecessor as chaplain, not Goff, who made the decision to schedule the Jumu'ah service in the gym. Goff believes that he did so because the volunteer imam who led the service usually conducted services in the gym and because the gym was the only available space in WSPF that would hold the 20 to 40 participants in the service. Goff was unaware of the heat advisory, but even if he had been, he says that he probably would not have moved the service because the Division of Adult Institutions (DAI) policy governing operations during extreme temperatures allows inmates to engage in non-strenuous activities. And Goff

was not even aware that Arroyo or any other inmate had filed a complaint about the missed observance until Arroyo filed this lawsuit. There is no evidence that Goff retaliated against Arroyo for filing a complaint, so Goff is entitled to summary judgment on this claim.

**C. Religious-service scheduling claims**

Arroyo brings claims under the Fourteenth Amendment's Equal Protection Clause against Goff and Trina Kroening-Skime, a program supervisor at WSPF, alleging that Muslim inmates in his unit are frequently not informed about their services until after they are over and that inmates who are members of other religious groups do not have similar difficulties attending their services. These claims also require Arroyo to show that these defendants intended to violate his rights. *Chavez*, 251 F.3d at 645.

Again, the facts do not show any such intent. WSPF has held Islamic religious services regularly on Fridays since Goff became chaplain. These services, along with all other WSPF religious services, are listed on a monthly schedule created by Goff and emailed to all WSPF sergeants and supervisors as well as any staff who need the information. Goff also distributes a weekly newsletter to staff that lists all inmates who are members of particular religious groups along with an updated schedule for the upcoming week. He distributes additional notifications as needed. Kroening-Skime is Goff's supervisor, but she is not directly involved in scheduling or publicizing religious programming. Goff discusses such issues with her only as necessary.

In short, Goff regularly updates WSPF staff about the schedule of all religious events, taking equal efforts to publicize events of all faiths. And Kroening-Skime is not directly involved in scheduling or publicizing religious events. There is no evidence that these defendants had any intent to violate Arroyo's constitutional rights, so they are entitled to summary judgment on these claims.

**D. Qur'anic dictionary claims**

At some point after the June 15 Eid al-Fitr service, a volunteer imam named Altahat brought a Qur'anic dictionary to WSPF that he intended to give to Arroyo.[2] Goff reminded Altahat that under DAI policy, volunteers in the prison, including religious volunteers, are not allowed to give anything to individual inmates, including religious materials. Altahat gave the dictionary to Goff and said that he was relieved because he felt pressured by some inmates to supply them with religious materials. Goff placed the dictionary in the prison library, where it could be checked out by any inmate for a short period of time. Arroyo contends that Goff violated his rights under the First and Fourteenth Amendments when Goff refused to allow him to keep the donated dictionary.

   1. **First Amendment claim**

A prison rule that restricts inmates' First Amendment rights is valid if "it is reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). This analysis requires me to consider four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate government interest; (2) whether Arroyo has an alternative way to exercise his religion; (3) what impact unrestricted accommodation of Arroyo's right to exercise his religion would have on prison administration; and (4) whether WSPF officials can achieve their goals without encroaching on Arroyo's rights. *Id.* at 89–91. Defendants are not required to show that the restriction is valid; rather, Arroyo must show that it is invalid. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

---

[2] Defendants do not provide Altahat's first name.

On its face, the restriction is not obviously unconstitutional, and Arroyo hasn't submitted anything that would undermine the restriction under these four factors. First, defendants identify three purposes of the restriction: (1) preventing inmates from exerting unwanted pressure on volunteers and dissuading them from future volunteerism; (2) preventing inmates from manipulating volunteers into smuggling contraband into the prison; and (3) preventing jealousy among inmates that might lead to fighting. These purposes are rationally connected to a restriction barring inmates from possessing texts given to them by volunteers. Second, Arroyo had alternative ways to access a Qur'anic dictionary, such as borrowing the donated copy from the library, purchasing one himself, or asking family or friends to send one to him. Third, lifting the restriction could lead to precisely the types of problems that the restriction is intended to prevent. And fourth, I see no "ready alternatives" that would accomplish the restriction's goals, which "is evidence of the reasonableness of [the] prison regulation." *Turner*, 482 U.S. at 90. So Goff is entitled to summary judgment on this claim.

2.  **Fourteenth Amendment claim**

To succeed on his Fourteenth Amendment equal-protection claim against Goff, Arroyo must show that Goff intended to discriminate against him. *Chavez*, 251 F.3d at 645. The restriction against volunteers donating items to individual inmates applies equally to prisoners of all religious faiths, with one exception: an inmate who is a member of a Native American religious group may receive a medicine bag from a recognized spiritual leader with the chaplain's prior approval. Dkt. 26, ¶ 41. This exception predates Goff's tenure as chaplain, he had no part in creating it, he does not know why it was created, and he is not aware of any inmate receiving a medicine bag under this exception since he became chaplain. *Id.* There is no

7

evidence that Goff applied the restriction in a discriminatory fashion, so Goff is entitled to summary judgment on this claim as well.

### E. Claims for injunctive relief

Arroyo brings an official-capacity claim for injunctive relief against Goff regarding WSPF's method of distributing worship schedules. And he brings claims for injunctive relief under the Religious Land Use and Institutionalized Persons Act against Goff, Kroening-Skime, and WSPF warden Gary Boughton based on his allegations that he was prevented from attending religious services and that he was denied access to religious materials.

Arroyo was transferred to another institution after he filed this lawsuit, so his claims for injunctive relief regarding WSPF's distribution of worship schedules and his inability to attend religious services at WSPF are moot unless he can show that he is likely to be transferred back to WSPF. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). There is no evidence in the record that Arroyo is likely to return to WSPF, so defendants are entitled to summary judgment on these claims. That leaves Arroyo's request for injunctive relief regarding his access to religious materials under DAI policy. Because Arroyo hasn't shown that the policy is unconstitutional, he is not entitled to injunctive relief regarding the policy. So I will grant summary judgment to defendants on this claim as well.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 24, is GRANTED. The clerk of court is directed to enter judgment on behalf of defendants and close this case.

Entered June 2, 2020.

                          BY THE COURT:

                          /s/
                          _____
                          JAMES D. PETERSON
                          District Judge